**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**


*In re* **E.S., E.C.-1, K.S., and A.S.**

**No. 21-0275** (Harrison County 18-JA-90-3, 18-JA-91-3, 18-JA-92-3, and 19-JA-26-3)


**MEMORANDUM DECISION**


Petitioner Mother E.C.-2, by counsel Dreama D. Sinkkanen, appeals the Circuit Court of Harrison County's February 10, 2021, order terminating her parental and custodial rights to E.S., E.C.-1, K.S., and A.S.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Katherine A. Campbell, filed a response in support of the circuit court's order. The guardian ad litem, Julie N. Garvin ("guardian"), filed a response on the children's behalf in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental and custodial rights to the children rather than imposing a less-restrictive dispositional alternative.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In 2011, the DHHR filed a child abuse and neglect petition against petitioner and her then husband alleging that she locked then four-year old E.S. and then two-year old E.C.-1 in their bedrooms for extended periods of time. After petitioner failed to comply with services, the DHHR removed the children from her home. Ultimately, the circuit court reunified the children

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, as one of the children and petitioner share the same initials, we refer to them as E.C.-1 and E.C.-2, respectively, throughout this memorandum decision.

with petitioner, and terminated E.S.'s father's parental rights and E.C.-1's father's custodial rights to those children.

In September of 2018, the DHHR alleged that then eleven-year-old E.S. disclosed to school personnel that he was afraid to return home because his stepfather, J.S., told him that he would kill the child "with [the] swords" in their garage if the child was at home when J.S. turned from work. E.S. further disclosed that he forgot to feed the family cat and, as punishment, petitioner "put him on a duct-tape square in the basement" and monitored him with security cameras to ensure he remained in the square. He reported that he was required to be in the duct-tape square from the time he returned home from school until 8 o'clock in the evening, when he was sent to bed. This punishment continued for several days. The child reported that J.S. told the child that he did not deserve to live in the house, that he was not part of the family, and that he was a bad son. Moreover, the child described the parents striking him with a belt between eight to thirteen times as a single instance of discipline. Finally, the DHHR alleged that petitioner tested positive for marijuana while pregnant with newborn K.S. The DHHR asserted that petitioner refused to stop smoking marijuana, despite the fact that she was breastfeeding K.S. Petitioner waived her preliminary hearing.

The DHHR filed an amended petition in November of 2018. The DHHR alleged that E.S. participated in a psychological evaluation, and the evaluator diagnosed the child with post-traumatic stress disorder ("PTSD"), major depressive disorder, social exclusion or rejection, and "possible" attention deficit hyperactivity disorder ("ADHD"). During the evaluation, E.S. disclosed that he was the recipient of significant physical abuse, including J.S. "chok[ing] him and pick[ing] him up by his neck." The evaluator noted that E.S. seemed preoccupied with personal safety and fears of death, as well as physiological and psychological arousal around knives. Finally, the DHHR alleged that E.C.-1 reported domestic violence between petitioner and J.S., being physically and emotionally abused by J.S., and observing J.S. abuse E.S. E.C.-1's therapist diagnosed the child with PTSD and dissociative symptoms.

Later in November of 2018, the circuit court convened an adjudicatory hearing. Petitioner stipulated to the allegations in the petition. The circuit court adjudicated petitioner as an abusing parent upon her stipulation. Thereafter, petitioner was granted a post-adjudicatory improvement period in December of 2018, which was later extended.

The DHHR filed an amended petition in August of 2019, naming A.S., born in July of 2019, as an infant respondent in the matter. In November of 2019, petitioner moved for a post-dispositional improvement period, which the circuit court granted.

In August of 2020, the circuit court held a dispositional hearing and heard testimony from petitioner's therapist, her service providers, the children's therapists, and petitioner herself. The circuit court also heard in camera testimony of E.C.-1 in September of 2020. Following the conclusion of evidence, the circuit court determined that petitioner continued to minimize the conduct alleged in the petition and failed to acknowledge the physical and emotional abuse of the children. Petitioner's therapist testified that petitioner informed her that she punished E.S. by making him stay in a duct-taped square on the basement floor for an hour long "time out." The court found that petitioner's statement was contrary to her prior admission that E.S. remained

within the duct-tape square for lengthy periods of time over several days. Further, petitioner's therapist testified that petitioner consistently denied that J.S. threatened to kill E.S., stating that J.S. would "never say that." The circuit court found that petitioner did not discuss the very incident that led to the filing of the [p]etition until August 10, 2020, and petitioner had not addressed her responsibility in the emotional and physical abuse suffered by the children.

Petitioner also stated during therapy that J.S. was a "stressor" to her children. Yet, petitioner continued to associate with him, as evidenced by petitioner storing her belongings in J.S.'s home, showering at his home, and suggesting virtual visitation with the children from his home. Further, petitioner continued to discuss J.S. with E.C.-1, despite knowing that the child had "no positive feelings" towards J.S.

During her in camera testimony, then eleven-year-old E.C.-1 confirmed that petitioner placed E.S. in the duct tape box on the basement floor "for several hours at a time for several days." The child recounted that she and E.S. were frequently "smacked" by petitioner and J.S. and belittled by them. E.C.-1 also reported that she was left in the home alone to supervise the other children and that the home had insufficient food. The child did not believe that it was safe for her or her siblings to return to petitioner's care and stated that she only wanted supervised contact with petitioner.

The circuit court heard evidence that E.S. was in a residential placement. Then thirteen-year-old E.S. was reportedly functioning at a seven- or eight-year-old level and had difficulty regulating his emotions when he felt unsafe or insecure. He "indicated trauma" to his therapist but was not willing or able to address it yet; he would only say that something happened but would not describe what occurred. The child's therapist believed that addressing E.S.'s trauma could be a lengthy process and recommended that the child complete treatment without disruption. The circuit court found that E.S. and E.C.-1 had suffered extensive psychological harm and had progressed "only a little in recovering from their traumas." The court also found that returning the children to petitioner's home "could have a devasting impact on their emotional and mental health." The circuit court also concluded that the children did not have a parent-child bond with petitioner.

Ultimately, the circuit court decided that termination of petitioner's parental and custodial rights was the least restrictive disposition. The court found by clear and convincing evidence that E.S. and E.C.-1 were the victims of physical and emotional abuse, which placed the other children in the home at risk of abuse. The circuit court determined that petitioner participated in all services recommended by the DHHR. However, the court further found that "despite being afforded numerous improvement periods, [petitioner] displayed little insight into the underlying issues which gave rise to the [p]etitions" and that petitioner's continued lack of insight placed the children's safety and welfare at risk. Therefore, the circuit court found that petitioner had not made sufficient progress to justify the return of the children because she continued to minimize the conditions alleged in the petitions. Because petitioner was unwilling or unable to acknowledge the physical and emotional abuse of the children, the circuit court concluded that there was no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected in the near future and that termination of petitioner's parental and custodial rights was

in the children's best interests. Petitioner now appeals the circuit court's February 10, 2021, order that terminated her parental and custodial rights.[2]

The Court has previously held:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating her parental and custodial rights to the children. According to petitioner, she was making progress in services, only to be substantially hindered by the COVID-19 pandemic. Petitioner asserts that she was progressing towards unsupervised visitations with the children, but the DHHR required video visitations once the pandemic began. She further avers that she substantially participated in the terms of her improvement period as an indicator of progress.

Significantly, petitioner concedes that the circuit court found that she failed to acknowledge the conditions of abuse and neglect but fails to challenge this finding. This Court has held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

---

[2]The circuit court also terminated the parental and custodial rights of J.S. to K.S. and A.S. The adult respondents divorced during the proceedings, and J.S. no longer exercises any rights over E.S. or E.C. According to the parties, the permanency plan for E.C., K.S., and A.S. is adoption in their current foster placement. E.S. remains in his residential treatment, and his permanency plan is adoption or legal guardianship following the completion of that treatment.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). The record supports the circuit court's finding that petitioner failed to acknowledge the extent of the abuse and neglect that she inflicted on the children. The evidence showed that petitioner misrepresented the conditions of abuse and neglect to her therapist, stating that she used the duct tape square in the basement as a one hour "time out" for E.S. Further, petitioner denied that J.S. threatened E.S. Petitioner's recitation of the conditions is substantially different from E.C.-1's testimony that petitioner directed E.S. to remain in the square for several hours over several days. Furthermore, it appears petitioner did not mention that she and J.S. struck the children "every day" and consistently belittled them. Upon our review, we find no error in the circuit court's finding that petitioner failed to acknowledge the conditions of abuse and neglect, which is fatal to petitioner's appeal.

Pursuant to West Virginia Code § 49-4-604(c)(6), a circuit court may terminate a parent's parental and custodial rights upon finding that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the welfare of the children. West Virginia Code § 49-4-604(d) provides that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected" means that "the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." This Court has consistently held that a failure to acknowledge the conditions of abuse and neglect renders those conditions untreatable. Regardless of petitioner's participation in services during the proceedings, this evidence definitively established that there was no reasonable likelihood that the conditions of neglect and abuse could be substantially corrected in the near future.

Furthermore, the circuit court found that the children needed permanency and consistency that petitioner could not reasonably provide in the near future. According to their therapists, both E.C.-1 and E.S. required additional time to recover from the trauma of petitioner's care. The circuit court found that reunification with petitioner could be "devastating" to the children's mental health, and we find no error in that conclusion. Termination of petitioner's parental and custodial rights was necessary for the children's welfare to provide permanency to the children.

This Court has held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As there was no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected in the near future due to petitioner's failure to acknowledge the conditions of abuse and neglect, we find no error in the circuit court's termination of petitioner's parental and custodial rights to the children.

5

Finally, petitioner briefly argues that the circuit court erred in denying her post-termination visitation with the children. She argues, without citation to the record, that E.S. desired to have continued contact with her. This Court has held that

> "[w]hen parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D.*, 211 W. Va. 79, 562 S.E.2d 147 (2002). As noted, petitioner's assertion that E.S. requested contact is unsupported. To the contrary, the circuit court denied post-termination visitation between petitioner and the children "due to the trauma the older children have suffered, age of the two younger children, and the lack of bond" between them. Additionally, the circuit court heard evidence that "any recommendation regarding contact between E.S. and [petitioner] would depend on her progress in treatment." As noted above, petitioner failed to address the conditions of abuse and neglect in her treatment and no improvement was expected. Accordingly, we find no error in the circuit court denying petitioner post-termination visitation with the children.

For the foregoing reasons, we find no error in the decision of the circuit court, and its February 10, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: February 1, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice William R. Wooton